UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES BENJAMIN,

                      Plaintiff,

    -vs-                                **No. 6:10-CV-6675(MAT)**
                                                            **DECISION AND ORDER**

SUPERINTENDENT OF COLLINS CORR.
FAC., INCORPORATING, EMBODYING AND
REPRESENTING A CABAL OF JIM CROW,
JR.,

                      Defendant.

---

**I.   Introduction**

While an inmate in custody of the New York State Department of Corrections and Community ("DOCCS") at Collins Correctional Facility ("Collins"), pro se plaintiff James Benjamin ("Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983. In his original complaint (Dkt #1), Plaintiff claimed that the defendant, the Superintendent of Collins Correctional Facility, "representing a cabal of Jim Crow," violated Plaintiff's rights when he "approv[ed] . . . the distortion of the Time Allowance Committee (TAC) at Gouverneur Correctional Facility", see Complaint, "Page Two of Seven"; "reviewed and approved hastening [his] demise via impromptu – Policies – such Policies discontinued effective medical prescriptions for [his] controlling [his] diabetes and etc.," and "implicitly rewarded a Stockholm-Syndrome-inmate's and a bigotted [sic]-staff-person's spitting in [his] face and screaming a disparaging and abusive racial name", see id., "Page Three of

Seven". Plaintiff stated that he "challenge[d] [his] confinement." Id., "Page One of Seven".

On initial screening, the Court dismissed several claims pursuant to 28 U.S.C. § 1915A in an Order dated February 14, 2011 (Dkt #4). In particular, Plaintiff's claims challenging his confinement and alleging denial of due process in connection with his TAC hearing were found to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). The Court noted that Plaintiff was unable to maintain a § 1983 action raising these claims unless the determinations regarding his confinement were successfully overturned by writ of habeas corpus or otherwise. See Dkt #4 at 4-5. These claims accordingly were dismissed without prejudice. The Court warned Plaintiff that should he attempt to re-institute the claims challenging the TAC's good-time credit calculation without first overturning the previous determinations, he could be subject to sanctions for abusive litigation tactics. Id. at 6.

With regard to Plaintiff's claims alleging constitutional violations based on certain conditions of his confinement (denial of adequate medical care and racial harassment), the Court found that they were subject to dismissal with leave to replead. In particular, Plaintiff had failed to adequately plead personal involvement by the named defendants. Namely, Plaintiff was attempting to hold the Superintendent of Collins liable for actions that occurred at Gouverneur Correctional Facility in 2002. Id. at

5. Moreover, Plaintiff failed to allege who was responsible for these actions, when they occurred, or where they occurred. Nor did Plaintiff allege facts showing that the Superintendent of Collins could be held responsible for actions committed by medical staff and correctional staff. Id.

The Court elected to permit Plaintiff to file an amended complaint raising his conditions of confinement claims, provided that he included the necessary allegations regarding "who, specifically, violated his rights, and how, when and where, specifically, they violated his rights." Dkt #4 at 6.

Prior to the Court issuing its February 14, 2011 Order, Plaintiff was released from incarceration, having reached his maximum expiration date on February 3, 2011. Although Plaintiff timely updated his address with the Court, the February 14th Order mistakenly was sent to Plaintiff's previous DOCCS address.

After Plaintiff eventually received a copy of Dkt #4, Plaintiff responded on March 7, 2011, with an amended complaint that repled the claims related to the TAC's determination on the basis that habeas corpus was not an effective remedy since he was no longer in custody. Plaintiff did not replead his other claims.

In an Order (Dkt #6) dated August 5, 2011, the Court (Skretny, D.J.) considered whether Plaintiff's most recent pleading should be considered a request for reconsideration under Federal Rule of Civil Procedure 54(b) or a supplemental complaint. The Court noted

Plaintiff's claims challenging his confinement and alleging denial of due process under the Fourteenth Amendment were subject to dismissal without prejudice on the basis that, while in custody, his "sole federal remedy [was] a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Because Plaintiff since had been released from custody after completing his sentence, habeas corpus was not available as a remedy, and Heck v. Humphrey, supra, was no longer a bar to his claim under 42 U.S.C. § 1983. Therefore, the Court deemed his most recent submission an appropriately filed amended complaint.

Plaintiff also asserted that the Court had misperceived his claim as a challenge to the TAC's calculation. Plaintiff's claim appeared to be that in 2002, the TAC withheld good time credit without either a Tier III disciplinary finding and disregarded a Certificate of Earned Eligibility ("CCE") issued in 1996. As a result, Plaintiff was confined past his conditional release date in violation of his due process and equal protection rights. He asserted that the TAC's constitutionally flawed decision was "reviewed, approved, evaluated, ratified and rubber-stamped by the Superintendents in every facility in which he was confined thereafter." The Court did not express an opinion as to whether Plaintiff could maintain a claim with regard to the November 2002 TAC decision itself, which appeared to be outside of the three-year statute of limitations. However, the Court found, there was "no

obvious bar to his bringing a claim against any Superintendent who was apprised of the alleged constitutional violation and failed to review the situation to determine if [he] was indeed entitled to release." Dkt #6 at 3. Because Plaintiff had failed to name any individual superintendent or to explain whether or how he brought this alleged constitutional violation to their attention, Plaintiff was permitted to again amend his complaint so as to state the names of those superintendents who were personally involved in the deprivation about which he complained, and how they were personally involved. Id. at 3-4.

On or about September 6, 2011, Plaintiff filed a request for a six-month extension of time in which to file a second amended complaint, alleging that he was confined in a medical facility without his legal materials, and therefore was unable to comply with the Court's scheduling order. The Court (Feldman, M.J.) denied the request, finding that six months was too lengthy a time-period, given the nature of the information requested by Judge Skretny (i.e., the names of the defendants involved in the alleged violations and the extent of their involvement). See Dkt #8. Plaintiff was given 45 days in which to file his second amended complaint.

On December 1, 2011, Judge Feldman's order sent to Plaintiff was returned to the Court as undeliverable. On February 21, 2012, Plaintiff updated his address with the Court.

On March 5, 2012, Plaintiff requested an extension of time so that he could "gather/recount the names of the Facility Superintendents who rubber stamped their respective Grievance Committees abrogating my Earned Eligibility Certificate, trashing my Liberty Interest and violating Correction Law Section 805." Dkt #11.

On March 26, 2012, Plaintiff sent the Court a letter indicating that the "Cabal includes Superintendents and Grievance Committees at Auburn, Cayuga, Collins, Elmira, Livingston, Midstate, and Orleans" who, "[u]nder the pretext of law, . . . rubber-[sic] the Gouverneur Correctional Facilities [sic] abrogating my Conditional Release Date in violation of Corrections Law Section 805." Dkt #11 (Letter dated 3/26/12).

On April 12, 2012, the Court (Larimer, D.J.) issued an order directing Plaintiff to show cause in writing on or before May 14, 2012, why his case should not be dismissed for failure to prosecute. See Dkt #9.

Plaintiff's second amended complaint (Dkt #10) was filed on April 24, 2012, pursuant to the prisoner mailbox rule. He names the following "entity" as the: "Supt. Of Collins Corr. Fac, Incorporating And Representing A Cabal Of Jim Crow Jr." In the "description of parties" section of the form, Plaintiff again listed the name of the defendant as "Corr. Fac. Superintendents incorporating Embodying and representing Jim Crow Jr". For the

defendant's address, Plaintiff stated, "North Country Fac. In which I was confined-addresses unremembered." In the space for the second "Name of Defendant", Plaintiff wrote, "Unknown nor Remembered." Given Plaintiff's apparent inability to comply with simple instructions, the Court (Curtin, D.J.) determined that it was "in the interests of judicial economy to deem the defendant to be James G. Berbary, the Superintendent at Collins (the last DOCCS facility at which Plaintiff resided, prior to his reaching his maximum release date). Dkt # at 4.

The Court noted that to the extent Plaintiff sought to sue any other individual, besides Superintendent Berbary, for allegedly ratifying the decisions which caused him to be illegally detained past his conditional release date, he would be permitted to again amend his complaint to name such individuals. Dkt #12 at 5. Plaintiff was again instructed that he was required to "name only individuals who were personally responsible, and set forth how, when and where, specifically, they violated his rights." Id.

With regard to his claims of denial of medical care and racial harassment, the Court observed that Plaintiff appeared to have abandoned them. Id. Nevertheless, the Court permitted Plaintiff to amend his complaint to name the individuals who were personally responsible, and set forth how, when and where they violated his rights. Id. Plaintiff was reminded of the three-year statute of limitations applicable to § 1983 claims, and advised that any claim

based on incidents that occurred more than three years before he filed this action would be subject to a statute of limitations defense. Id. Plaintiff was given until July 16, 2012, in which to file his second amended complaint. The Court stated that if Plaintiff failed to do so, his first amended complaint would be served on Superintendent Berbary.

Plaintiff failed to file a second amended complaint, and the first amended complaint (Dkt #10) was served on Superintendent Berbary on or about February 4, 2013.

On February 22, 2013, Defendant filed a motion to dismiss (Dkt #13) the first amended complaint. Plaintiff filed a letter (Dkt #17) requesting a jury trial but did not otherwise meaningfully oppose Defendants' motion.

For the reasons that follow, Defendants' motion is granted, and the first amended complaint (Dkt #10) is dismissed for failure to state a claim.

**II. General Legal Principles**

   **A. Motions to Dismiss for Failure to State a Claim**

Rule 12(b)(6) allows dismissal of complaints based upon the plaintiff's failure "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 129 S. Ct. at 1950, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). However, the plaintiff's allegations must consist of more than mere labels or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949–50.

### B. Construction of Pro Se Pleadings

The Supreme Court has noted that "[a] document filed pro se is to be liberally construed,' and must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007). Because Plaintiff is acting pro se, the Court will construe his submissions liberally, "to raise the strongest arguments they suggest." Bertin, 478 F.3d at 489.

**III. Discussion**

Even construing Plaintiff's submissions with the utmost liberality, he fails to state a comprehensible, much less a colorable, legal claim.

**A.   The Decision of the Gouveneur TAC**

Plaintiff asserts that in their November 26, 2002 decision denying him conditional release, the TAC "incontrovertibly hoodwinked the courts by accusing [him] of failing to fulfill a program-contractual-obligation existing only in Defendant's crassness. . . ." Dkt #10, "Page Two of Seven". This claim is fatally flawed for several reasons. In particular, it is outside the applicable statute of limitations, as discussed below.

"In light of the 'settled federal practice' of reaching constitutional questions only when a case cannot be decided on statutory grounds, New York City Transit Authority v. Beazer, 440 U.S. 568, 582, 99 S. Ct. 1355, 1364, 59 L.Ed.2d 587 (1979), this Court is obligated to decide defendants' statute of limitations argument before considering the merits of plaintiff's constitutional claims." Lee v. Coughlin, 643 F. Supp. 546, 548 (W.D.N.Y. 1996). It is undisputed that Plaintiff filed the instant action on November 29, 2010. In Owens v. Okure, 488 U.S. 235 (1989) the Supreme Court concluded that New York's three-year statute of limitations governing general personal injury actions, see New York Civil Practice Law and Rules § 214(5), applies to § 1983 claims

brought in this state. Accordingly, all of Plaintiff's claims based on events that occurred prior to November 29, 2007, are time-barred and must be dismissed.

To the extent that Plaintiff claims that other DOCCS superintendents violated his rights by "reviewing and approving the absurd and malicious distortion" of the Gouveneur TAC, Plaintiff has entirely failed to plead personal involvement by *any* individuals capable of being sued. The allegation of a defendant's personal involvement in any alleged constitutional violation is a prerequisite to a damage award for personal injury under 42 U.S.C. 1983, Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994), and without such involvement, Plaintiff's claims concerning the purportedly illegal ratification of the TAC's decision must fail.

**B. Harassment**

Plaintiff states that "the Defendant" "baited, terrified and tortured [him] via small-minded hatefulness-the Defendant implicitly rewarded a Stockholm-Syndrome-inmate's and a bigotted-[sic]-staff-person's spitting in [his] face and screaming a disparaging and derisive racial name." Dkt #10, "Page Three of Seven".

As an initial matter, Plaintiff has provided no clue as to when the alleged baiting, terrifying, torturing, spitting, or screaming took place. Thus, it is impossible to determine whether this claim is barred by the statute of limitations. Even if it were

timely, it patently fails to state a claim. Allegations of verbal harassment, standing alone, are not redressable under 42 U.S.C. § 1983. See, e.g., Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) ("The claim that a prison guard called [plaintiff] names also did not allege any appreciable injury and was properly dismissed.").

**C.     Deliberate Medical Indifference**

Plaintiff asserts that "the Defendant reviewed and approved hastening [his] demise via impromptu-Policies-such Policies discontinued effective medical prescriptions for [his] controlling [his] diabetes. . . ." Dkt #10, "Page Three of Seven". Plaintiff has provided no indication as to when the alleged hastening of his demise occurred. Thus, it is impossible to determine whether this claim is barred by the statute of limitations.

Even if it were timely, it does not allege any facts to support a finding of personal involvement by Defendant in the purported Eighth Amendment violation. Plaintiff believes that Defendant should be liable based upon his supervisory position at Collins, where he is the superintendent. This, of course, is insufficient as a matter of law. See, e.g., Joyner v. Greiner, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002) ("Plaintiff apparently seeks to attach personal liability to these defendants, especially Superintendent Greiner, based upon their supervisory positions at Sing Sing, where Greiner is the superintendent and Perilli the

chief medical officer. This, of course, is insufficient as a matter of law.") (citing Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (holding that mere "linkage in the prison chain of command" will not suffice to establish personal involvement)). This claim is dismissed for failure to state a claim, as Plaintiff has not alleged how Defendant, who is a facility superintendent, was liable for any acts or omissions of DOCCS' medical staff.

### D.  Remaining Allegations

The allegations on Page Four of Seven pertain to his alleged involvement in the 1971 riots at Attica where he supposedly "counter-mand[ed] the plan to cut the throats of the hostages on parade." It is not clear how this gives rise to a § 1983 claim against Defendant. In any event, the allegations on Page Four of Seven are clearly untimely.

The allegations on Page Five of Seven are too incomprehensible and vague to state a constitutional claim. As an example, Plaintiff accuses unknown individuals of committing "hardships with the malevolence and antagonism of crassness . . . ." No constitutional claim is discernible in these ramblings.

The allegations on Pages Six of Seven and Seven of Seven relate to the TAC's decision, which has been discussed above. As the Court has already found, no viable claim exists based upon the alleged constitutional infirmities in the TAC's decision.

**IV. Conclusion**

For all the foregoing reasons, Defendant's motion to dismiss is granted, the first amended complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close the case. The Court hereby certifies that any appeal from this Decision and Order would not be taken in good faith, and therefore denies leave to appeal as a poor person.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   October 15, 2013
         Rochester, New York